UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANINDO DEY, | |
| Plaintiff, | Civil Action No. 18-978 (ES) (MAH) |
| v. | |
| INNODATA INC., | OPINION |
| Defendant. | |

## I.  INTRODUCTION

This matter is presently before this Court on Defendant's, Innodata Inc. ("Defendant"), motion to amend its Answer to the Complaint. *See* Defendant's Motion to Amend the Answer, May 28, 2019, D.E. 71. This Court has considered the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court will grant Defendant's motion to amend its Answer to the Complaint.

## II.  BACKGROUND

The following background is derived from the allegations of the Complaint. Plaintiff, Anindo Dey ("Plaintiff"), was originally employed with Defendant[1] as a Vice President of Business Development in Noida, India. Compl., July 28, 2017, D.E. 1, at ¶ 11. Plaintiff contends that at the request of Jack Abuhoff ("Mr. Abuhoff"), Defendant's Chairman and Chief Executive Officer, he moved to the United States. *Id.* Plaintiff alleges that in February 2016, Defendant sponsored him to work in the United States. *Id.* ¶ 13. Plaintiff then moved to the United States

---

[1] Defendant is Delaware corporation with headquarters in Hackensack, New Jersey. Compl., July 28, 2017, D.E. 1, at ¶¶ 9, 12. Defendant "provid[es] content solutions, data analytics and related services to publishers, information providers, and enterprises." *Id.* at ¶ 12.

and worked in the field and out of his home office in Illinois. *Id.* Plaintiff reported to Defendant's headquarters in Hackensack, New Jersey. *Id.*

Throughout Plaintiff's employment, Plaintiff reported to Lisa Indovino ("Ms. Indovino"), Defendant's Senior Vice President, Digital Data Solutions. *Id.* at ¶ 15. Plaintiff contends that he was subject to a hostile work environment and a work culture of discrimination based on his Asian ethnicity and Indian Origin. *Id.* at ¶¶ 16-17. Specifically, Plaintiff contends that Ms. Indovino subjected him to "a campaign of harassment, an intimidating and threatening work environment, and verbal and racial abuse upon his relocation to the United States." *Id.* at ¶ 18.

Plaintiff submits that in an email dated September 12, 2016, he reported Ms. Indovino's behavior to Mr. Abuhoff. *Id.* at ¶ 19. According to Plaintiff, the September 12, 2016, email specifically recounted "instances wherein Indovino's discriminatory and harassing nature were directed towards him, including but not limited to, berating him and screaming at him seemingly for most actions he took." *Id.* at ¶ 20. Plaintiff alleges that Defendant failed to take "any action to address the concerns of discrimination raised by [him] in his September 12, 2016, email to Abuhoff." *Id.* at ¶ 30. Plaintiff further alleges that "[a]s a direct and proximate result of the stress inflicted upon him by Indovino, [he] suffered a silent heart attack sometime in September of 2016." *Id.* at ¶ 29.

On November 8, 2016, Plaintiff filed a Charge of Discrimination with the Chicago District Office of the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Right Act. *Id.* at ¶ 31. Plaintiff represents that the following day, November 9, 2016, he underwent emergency heart surgery "as a result of the stress induced heart attack." *Id.* at ¶ 33. Plaintiff contends that upon returning to work, Ms. Indovino "continued her harassment, increased scrutiny and changing in her performance appraisal of [Plaintiff]." *Id.* at ¶ 35. On

November 30, 2016, the EEOC Office of Chicago transferred the Charge to the EEOC Office in New Jersey. *Id.* at ¶ 28. Plaintiff submits that two days after becoming aware of his Charge of Discrimination, Defendant terminated his employment. *Id.* at ¶ 39.

On May 2, 2017, the EEOC issued Plaintiff a Right to Sue Letter. *Id.* at ¶ 3. On July 28, 2017, Plaintiff filed a Complaint in the United States District Court for the Northern District of Illinois, Eastern Division, alleging violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Illinois Humans Rights Act, and the Illinois Whistleblower Act. *See generally* Compl., D.E. 1, at ¶¶ 41-64, ¶¶ 71- 86. Plaintiff's Complaint also sets forth counts for retaliatory discharge. *Id.* at ¶¶ 65-70.

On November 1, 2017, Defendant filed an Answer to Plaintiff's Complaint, setting forth sixteen affirmative defenses and no counterclaims. *See generally* Answer, November 1, 2017, D.E. 28.

On January 22, 2018, this matter was transferred to the United District Court for the District of New Jersey. *See* Opinion and Order, January 22, 2018, D.E. 35. On February 28, 2019, Defendant filed a motion for leave to file an amended Answer. *See* Def. Motion for Leave to Amend Answer, February 28, 2019, D.E. 65. On May 20, 2019, the Court denied Defendant's motion without prejudice to the right to refile such a motion that contained a red-lined version of the proposed amended pleading. *See* Order, May 20, 2019, D.E. 68.[2]

---

[2] The Court's August 8, 2018 Pretrial Scheduling Order, D.E. 57, instructed that any motion to amend pleadings was to be filed by February 28, 2019. Pretrial Scheduling Order, August 8, 2018, D.E. 57, at ¶ 12. As Defendant's original motion for leave to file an amended Answer was filed on February 28, 2019, it was timely under the August 8, 2018, Pretrial Scheduling Order. Furthermore, Defendant's original motion for leave to file an amended Answer was denied without prejudice to the right to refile such a motion that contained a red-lined version of the proposed amended pleading by June 21, 2019. Order, May 20, 2019, D.E. 68. Defendant filed its renewed motion for leave to file an amended Answer was filed on May 28, 2019, in compliance with the Court's May 20, 2019 Order. Moreover, Plaintiff's opposition to Defendant's motion concedes

On May 28, 2019, Defendant filed a renewed motion for leave to file an amended Answer, seeking to add an affirmative defense and counterclaims for breach of contract, unjust enrichment, and promissory estoppel. Proposed Amended Answer, May 28, 2019, D.E. 71-1, at pp. 15-18. On June 13, 2019, Plaintiff opposed Defendant's motion. Pl. Opposition to Def.'s Motion, June 13, 2019, D.E. 73. On June 19, 2019, Defendant replied to Plaintiff's opposition. Def. Reply, June 19, 2019, D.E. 74.

## III.   ANALYSIS

Defendant's Proposed Amended Answer alleges that on February 19, 2016, Plaintiff executed a Promissory Note (the "Note") to Defendant. Proposed Amended Answer, May 28, 2019, D.E. 71-1, at p. 15, ¶ 1. According to the Note's terms, Plaintiff was to receive $6,250.00, which would be repaid with interest at 3.5% per annum on the unpaid balance. *Id.* at ¶¶ 2-3. Beginning in March 2016, Plaintiff was to pay Defendant forty-eight equal installments of $135.00 that were "payable twice monthly as an automatic salary deduction from each period." *Id*. at ¶ 4. The Note provided Defendant the option to make the Note "immediately due and payable in the event that Plaintiff ceased to be employed by Defendant, for any reasons, whether voluntary or involuntary." *Id.* at ¶ 5.

Defendant submits that Plaintiff received $6,250.00 upon signing the Note. *Id.* at ¶ 6. However, on December 21, 2016, Plaintiff's employment was terminated. *Id.* at ¶ 7. Defendant represents that since December 31, 2016, it has not received any payments toward the unpaid

---

that "[w]hile Defendant filed its Motion within the time period prescribed by this Court, Defendant waited until the very last day to file a Motion to Amend . . ." Pl. Brief in Opposition, June 13, 2019, D.E. 73, at 4. Accordingly, this motion is timely, and the Court need not conduct an analysis under Federal Rule of Civil Procedure 16 to determine whether Defendant has established good cause to amend the operative scheduling order.

balance, which remains at $3,780.22 with interest continuing to accrue. *Id.* at ¶¶ 10-11. As such, Defendant seeks to add an affirmative defense that reduces any award Plaintiff might receive by the unpaid balance of the loan plus interest. Proposed Amended Answer, May 28, 2019, D.E. 71-1, at p. 13. Defendant also seeks to add counterclaims for breach of contract, unjust enrichment, and promissory estoppel. *Id.* at pp. 15-18.

Defendant argues that it should be permitted to amend its Answer as it is "within the time period prescribed by the Court to move for an amendment of the pleadings, thus no bad faith, dilatory motives, or unexplained delay are at issue." Def.'s Br. in Support of Motion, May 28, 2019, D.E. 71, at 4. Defendant further argues that Plaintiff cannot "claim prejudice or unfair advantage as he is well aware of [Defendant's] efforts to collect payment on the debt owed . . . ." *Id.* at 4-5.

Plaintiff responds that allowing the proposed amendments would cause undue delay as "a new round of written discovery will be necessary." Pl. Opposition to Def.'s Mot., D.E. 73, at 4. Plaintiff further submits that Defendant was aware of the affirmative defense and counterclaims when it filed its Answer, which was over a year and a half ago. *Id.* at 5. Second, Plaintiff argues that he would be prejudiced by the proposed amendments as "[n]o discovery has been provided concerning the alleged promissory note and written discovery has concluded." *Id.* Third, Plaintiff alleges that Defendant has not met its burden in proving that its counterclaims are compulsory. *Id.* at 6. Specifically, Plaintiff submits that the counterclaims are based on an alleged breach of contract, whereas Plaintiff's Complaint is based on employment discrimination. *Id.*

Defendant's reply reiterates the reasons for the Court to allow amendment of the Answer. First, Defendant restates that its motion was made timely in accordance with the Court's parameters. Def's. Reply in Supp. of Mot. to Amend the Answer, D.E. 74. Second, Defendant

contends that Plaintiff will not be prejudiced by the amendment and counterclaims because "neither party will need to expend additional resources to conduct discovery." *Id.* Defendant further claims that "adjudication will require [nothing more] other than to which the parties have already agreed." *Id.* Defendant further argues that the counterclaims are compulsory because they involve the same parties, the same time period, and the same discovery. *Id.* Defendant cites to Plaintiff's opposition, where Plaintiff states that the Defendant's counterclaims are "an offshoot of the same basic controversy between the parties." *Id.*

Accordingly, the Court shall consider whether Defendant's counterclaims are compulsory or permissive under Rule 13 before it assesses the validity of those claims.

**A. Rule 13**

Federal Rule of Civil Procedure 13 "distinguishes between two types of counterclaims, compulsory and permissive." *Mt. Laurel Concrete, Inc. v. Orleans Homebuilders, Inc.*, Civ. No. 08-1553, 2009 WL 10689741, at *1 (D.N.J. Feb. 23, 2009) (citing Fed. R. Civ. P. 13(a)-(b)). "In determining whether to permit a party to add a counterclaim, the court should consider *inter alia* whether the counterclaim is compulsory." *Id.*

Federal Rule of Civil Procedure 13(a), which governs compulsory counterclaims, prescribes that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the Court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).

"It is well-established that the words transaction or occurrence in Rule 13(a) are not interpreted literally." *Korrow v. Aaron's Inc.*, Civ. No. 10-6317, 2015 WL 7720491, at 6 (D.N.J. Nov. 30, 2015) (citation and quotation marks omitted). "For a claim to qualify as a compulsory

counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the 'counterclaim bears a logical relationship to an opposing party's claim.'" *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (citing *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)). A logical relationship in the context of compulsory counterclaims should be "viewed liberally to promote judicial economy." *Id.* A logical relationship exists where separate trials on each of the claims would duplicate the efforts of the parties and the courts. *Id.* A duplication would occur where claims involve the "same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Great Lakes Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). Notably, "[t]he failure to plead a compulsory counterclaim bars a later independent action on that claim." *M.R. v. Ridley School Dist.*, 744 F.3d 112, 121 (3d Cir. 2014).

"Any claims that do not arise out of the same transaction or occurrence are permissive." *Mt. Laurel*, 2009 WL 10689741, at *1. Federal Rule of Civil Procedure 13(b), which governs permissive counterclaims, provides that "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). A permissive counterclaim, however, requires an independent basis of federal jurisdiction. *Mt. Laurel*, 2009 WL 10689741, at *1.

Here, Defendant's proposed counterclaims are compulsory. Plaintiff's Complaint alleges that Defendant, particularly Ms. Indovino, discriminated against him based on his Asian ethnicity and Indian Origin. Compl., July 28, 2017, D.E. 1, at ¶¶ 16-17. Based on the allegations of discrimination, Plaintiff's Complaint sets forth counts for violations of: Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Illinois Humans Rights Act, and the

Illinois Whistleblower Act. *See generally*, Compl., D.E. 1, at ¶¶ 41-64, ¶¶ 71-86. Plaintiff's Complaint, however, also alleges retaliatory discharge because Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. *Id.* at ¶¶ 65-70.

Defendant's proposed amended Answer, on the other hand, contends that Plaintiff executed a Promissory Note to Defendant, whereby Plaintiff was to receive $6,250,00 upon signing, which would be repaid with interest at 3.5% per annum on the unpaid balance. Proposed Amended Answer, May 28, 2019, D.E. 71-1, at p. 15, at ¶¶ 2-3. The Promissory Note provided Defendant the option to make the Note "immediately due and payable in the event that Plaintiff ceased to be employed by Defendant, for any reasons, whether voluntary or involuntary." *Id.* at ¶ 5. On December 21, 2016, Plaintiff's employment was terminated. *Id.* at ¶ 7. That same day, Defendant made a demand for the unpaid balance. *Id.* at ¶ 7. Accordingly, Defendant seeks to add an affirmative defense that reduces any award Plaintiff receives by the unpaid balance of the loan plus interest. Proposed Amended Answer, May 28, 2019, D.E. 71-1, at p. 13. Defendant also seeks to add counterclaims for breach of contract, unjust enrichment, and promissory estoppel. *Id.* at pp. 15-18.

Defendant's counterclaims are related to Plaintiff's retaliatory discharge claim. Indeed, on the day Plaintiff was discharged—December 21, 2016—Defendant exercised its option and demanded payment of the unpaid balance of the Promissory Note. Without Plaintiff getting terminated, he could not allege retaliatory discharge nor could Defendant have demanded payment of the remaining balance of the Promissory Note. As such, Defendant's counterclaims arise out of the same transaction or occurrence that gives rise to at least one of the claims in Plaintiff's Complaint. Such a conclusion also promotes judicial economy. As the parties are already before this Court, separating Plaintiff's claims and Defendant's counterclaims would duplicate the

parties' and the Courts' efforts, particularly with respect to discovery and motion practice. Furthermore, Defendant's counterclaims are straightforward and will not require extensive discovery.

As such, the Court now turns to Rule 15 to determine whether Defendant's counterclaims state valid causes of action.

### B. Rule 15

Under Rule 15, a party may amend the complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002).

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotation marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage,* 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler,* 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotation marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. As the Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A court conducting a futility analysis based only upon the sufficiency of the pleading must consider a limited record. Specifically, a court may consider only the proposed pleading, exhibits

attached to that pleading, matters of public record, and undisputedly authentic documents provided the claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *accord West Penn*, 627 F.3d at 97 n.6 (reiterating the rule and its limited exception for documents that are "integral or explicitly relied upon in the complaint").

Plaintiff's Rule 15 arguments in opposition to Defendant's proposed counterclaims are unpersuasive. While written discovery may be complete, fact discovery remains open through October 15, 2019. *See* Joint Stipulation to Amend Scheduling Order and Amended Scheduling Order, D.E. 77, at ¶ 1. Furthermore, Defendant's proposed amendments set forth straightforward claims, based largely in breach of contract. Discovery on such claims will not be extensive. To the extent that discovery on Defendant's counterclaims could not be completed by October 15, 2019, the parties could petition the Court for a modest extension of that deadline. Therefore, the Court cannot conclude that Plaintiff would be prejudiced by Defendant's proposed amendments.

Plaintiff also argues that Defendant was aware of the affirmative defense and counterclaims when it filed its Answer in November 2017 but did not allege them. Therefore, Plaintiff reasons, Defendant should not be allowed to amend now. That argument fails. "Leave to amend a complaint should only be denied because of undue delay if the delay causes the non-moving party to be prejudiced." *Cincerella v. Egg Harbor Tp. Police Dept.*, Civ. No. 06-1183, 2007 WL 2682965, at *2 (D.N.J. Sept. 6, 2007). Finally, for the reasons set forth above, the Court concludes that Defendant's proposed amendments will not prejudice Plaintiff.[3]

---

[3] Although Plaintiff does not argue that Defendant's proposed counterclaims are futile, the Court finds its prudent to address the possibility of such an argument here. Defendant's counterclaims allege that Plaintiff executed a Promissory Note to it, subject to specific terms. The Note provided Defendant the option to make it immediately due and payable if Plaintiff ceased to be employed by Defendant, whether voluntary or involuntary. Defendant then terminated

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for leave to file an amended Answer [D.E. 71] is granted.

*s/Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: September 13, 2019

---

Plaintiff's employment and demanded payment of the remaining balance of the Note. According to Defendant, Plaintiff has not yet paid the remaining balance of the Note. Therefore, Defendant seeks to add an affirmative defense that reduces any award Plaintiff receives by the unpaid balance of the loan plus interest. Defendant also seeks to add counterclaims for breach of contract, unjust enrichment, and promissory estoppel.

Defendant's counterclaims are sufficiently plead. Indeed, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. Here, Defendant has set forth enough facts to state valid claims to relief.