Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANINDO DEY,<br><br>                Plaintiff,<br><br>      v.<br><br>INNODATA INC.,<br><br>                Defendant. | Civil Action No. 18-0978 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Innodata Inc.'s ("Defendant") motion to strike plaintiff Anindo Dey's ("Plaintiff") jury demand and to enforce the parties' jury trial waiver pursuant to Federal Rules of Civil Procedure ("Rules") 12(f) and 39(a). (D.E. No. 177 ("Mot." or "Motion")).[1] Having considered the parties' submissions, and for the reasons set forth below, Defendant's Motion is **DENIED** *without prejudice*.

**I.   BACKGROUND**

The Court writes primarily for the parties, who are familiar with this matter's factual history, and recites only the necessary procedural posture pertinent to the pending Motion. On July 28, 2017, Plaintiff—a former employee of Defendant—initiated this matter in the United States District Court, Northern District of Illinois, raising claims for alleged (i) discrimination based on national origin pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I); (ii) discrimination based on race and ethnicity under Title VII

---

[1] Although Defendant does not cite any applicable Federal Rule(s) of Civil Procedure that governs its Motion (*see* Mot.), the Court construes the request as falling under Rules 12(f) and 39(a). (*See* D.E. No. 177).

(Count II); (iii) violation of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101, *et seq.* (Count III); (iv) retaliatory discharge under Illinois common law (Count IV); (v) discrimination based on national origin, race and/or color under the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. Ann. 5/6-101(A) (Count V); and (vi) violations of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/20 (Count VI). (D.E. No. 1 ("Complaint" or "Compl.") ¶¶ 42–89). Plaintiff's Complaint also contains a demand for a jury trial. (*Id.* at 13). On January 22, 2018, the matter was transferred to the District of New Jersey. (D.E. No. 36).

On February 24, 2022, this Court granted-in-part and denied-in-part Defendant's motion for summary judgment. (D.E. Nos. 120 & 121). The Court granted summary judgment in Defendant's favor on Plaintiff's Title VII disparate treatment discrimination claims, ADA claim, and IWA Section 10 claim. (D.E. No. 120 at 10; D.E. No. 121 at 1). The Court denied summary judgment in Plaintiff's favor with respect to his Title VII hostile work environment claim, IHRA retaliation claim, IWA Section 15 claim, and common law retaliatory discharge claim. (D.E. No. 121 at 1). The Court also requested supplemental briefing to ensure it had jurisdiction over Plaintiff's IHRA claim. (*Id.* at 1–2). On February 5, 2024, following supplemental briefing, settlement discussions, and unsuccessful mediation, the Court granted Defendant's motion for summary judgment with respect to Plaintiff's IHRA claim for lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. (D.E. No. 168). Accordingly, the remaining causes of action include (i) a Title VII hostile work environment claim; (ii) an IWA Section 15 claim; and (iii) a common law retaliatory discharge claim (together, the "Surviving Claims"). (*See* D.E. Nos. 121 & 168).

On September 9, 2024, Defendant filed the instant motion to strike Plaintiff's jury trial demand and to enforce the jury trial waiver found in the parties' agreement entitled "Agreement

Concerning Confidentiality and Non-Disclosure." (D.E. No. 177; D.E. No. 177-1 ("Mov. Br."); D.E. No. 177-2 (Declaration of A. Michael Weber ("Weber Decl.") and exhibits attached thereto)). On October 7, 2024, Plaintiff opposed (D.E. No. 179 ("Opp. Br.")), and on October 28, 2024, Defendant replied (D.E. No. 180 ("Reply Br.")).

The parties do not dispute that in conjunction with Plaintiff's February 5, 2016 offer of employment with Defendant,[2] Plaintiff executed the "Agreement Concerning Confidentiality and Non-Disclosure" at issue here. (Mov. Br. at 1; Opp. Br. at 1; Ex. B to Weber Decl. at 1 ("Agreement" or "Agmt.")). It is also undisputed that Plaintiff signed the Agreement on February 11, 2016. (Opp. Br. at 1; Agmt. at 5–6). The Agreement is six pages and contains fifteen numbered paragraphs prefaced with the following language: "In order to induce [Defendant] . . . to employ [Plaintiff] . . . [Plaintiff] hereby agrees to the following terms and conditions of employment." (Agmt. at 1). The Agreement concludes by stating: "[Plaintiff] acknowledges that [he] has been given the opportunity to review and ask questions concerning this Agreement" and "[Plaintiff] hereby agrees to, understands and accepts the terms and provisions contained in this Agreement." (*Id.* at 5).

Among other provisions, the Agreement contains a clause entitled "Jurisdiction," which provides that the parties consented to "any claims or disputes arising from or in connection with [Plaintiff's] employment with [Defendant]" being brought in the United States District Court, District of New Jersey. (Agmt. ¶ 6). The same provision also provides that "[t]he foregoing shall govern, among other claims and disputes, claims or disputes with respect to discrimination based on age, sex, race, color or creed or sexual or other harassment at the workplace." (*Id.*). Indeed,

---

[2] Plaintiff had been working for Defendant in India since 2013. (D.E. No. 120 at 2). Plaintiff requested a transfer to North America for purposes of new business generation. (*Id.*). Thus, the February 5, 2016 offer of employment involved a transfer from India to the United States. (*Id.*).

3

paragraph six formed the basis of the Memorandum Opinion and Order from the Honorable Judge Virginia M. Kendall, U.S.D.J., which transferred the instant matter to this Court. (D.E. No. 35 at 7–8). Specifically, Judge Kendall concluded that the valid forum selection clause "requir[ed] the Parties to resolve this employment discrimination dispute in the United States District Court for the District of New Jersey." (*Id.*).

In addition, the Agreement contains a provision entitled "Professional Behavior," through which the parties agreed "in the event [Plaintiff] at any time believes he . . . has been subject to sexual harassment, or other discrimination, he . . . will report this immediately to his . . . manager and within 24 hours in writing to the General Counsel or Director of Human Resources at corporate headquarters in New Jersey." (Agmt. ¶ 9). Moreover, the Agreement is fully integrated by way of a provision entitled "Entire Agreement; Headings; Gender." (*Id.* ¶ 14). Specifically, the provision states that "[t]his instrument contains the entire agreement of the parties with respect to the subject matter thereof and supersedes all prior agreements with respect to the subject matter [t]herein." (*Id.*). This provision continues to note that "[t]he foregoing notwithstanding, in the event of any conflict between a particular term or provision contained [t]herein and a particular term or provision contained in a written employment agreement that [Plaintiff] may have entered into with [Defendant] the particular term or provision that is more restrictive shall govern and control." (*Id.*).

Finally, and most relevant here, the Agreement contains a clause entitled "Jury Trial Waiver," which states, in full, that "[t]he parties agree to waive their right to a trial by jury of any dispute *arising out of or in connection with this Agreement*." (*Id.* ¶ 8 (emphasis added)).

## II.     LEGAL STANDARD

The Seventh Amendment to the United States Constitution protects a civil litigant's fundamental right to a jury trial. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). Federal Rule of Civil Procedure 38(a) provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a). Thus, "courts indulge every reasonable presumption against waiver." *Id.* at 393. However, a party can validly waive its constitutional right to a jury trial, so long as the waiver is knowing and voluntary. *Brookhart v. Janis*, 384 U.S. 1, 4–5 (1966); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007). The question of whether a party has validly waived its constitutional right to a jury trial is a federal question controlled by federal law. *Tracinda*, 502 F.3d at 222. Pursuant to Rule 39(a), a "trial on all issues so demanded must be by jury unless[] . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). The Court may strike an improper jury demand pursuant to Rule 12(f). *See Narducci v. Aegon USA*, Inc., No. 10-0955, 2010 WL 5325643, at *4 (D.N.J. Dec. 15, 2010).

In order to determine whether a party has knowingly and voluntarily waived its jury trial right, federal courts employ a test that examines the following four factors: (i) the existence of a gross disparity in bargaining power between the parties; (ii) the business or professional experience of the party opposing the waiver; (iii) whether the clause containing the waiver was conspicuous; (iv) whether the opposing party had an opportunity to negotiate terms of the contract. *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, No. 06-4449, 2007 WL 2473832, at *4 (D.N.J. Aug. 24, 2007). When these factors balance in support of finding a waiver of a jury demand, courts in this District have enforced contractual waivers. *Patch of Land Lending, LLC v. RR Baldwin Nwk, LLC*,

No. 16-9188, 2017 WL 11745061, at *2 (D.N.J. Aug. 15, 2017) (citing *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, No. 12-0521, 2013 WL 12147688, *3 (D.N.J. Aug. 14, 2013)).

Finally, courts in this Circuit have held that the party seeking to enforce a jury waiver provision bears the burden of establishing that the waiver was knowing and voluntary. *See Wells Fargo Bank, N.A. v. CCC Atl., LLC*, No. 12-0521, 2013 WL 12147688, at *2 (D.N.J. Aug. 14, 2013) ("Most courts find that the party seeking to enforce the jury waiver has the burden to show the waiver is valid."); *see also Vail v. Dermatology & Mohs Surgery Ctr., P.C.*, No. 24-1535, 2024 WL 4507815, at *8 (E.D. Pa. Oct. 16, 2024) ("The burden of proving a valid waiver is on the party seeking to enforce it.").

### III. DISCUSSION

Defendant maintains that Plaintiff knowingly and voluntarily executed the Agreement which contains the jury trial waiver and is applicable to all Surviving Claims. (*See generally* Mov. Br. at 4–9). Plaintiff opposes, primarily arguing that his allegations "do not arise out of a dispute over the Confidentiality Agreement" and that "unlike the choice of law and [forum] [sic]" provisions "which specifically applied to his employment, the jury waiver only applied to 'any dispute arising out of or in connection with th[e] Agreement [Concerning Confidentiality and Non-Disclosure].'" (Opp. Br. at 6 (quoting Agmt. ¶ 8)). Indeed, Plaintiff repeatedly contends that the jury waiver provision does not explicitly apply to the Surviving Claims, but rather is confined to topics covered in the Agreement, which is "entirely silent as to discrimination, retaliation, and harassment" claims. (*Id.* at 9; *see id.* at 6 (arguing that "the Confidentiality Agreement is not an employment contract")). He also maintains that he did not have equal bargaining power and is not a sophisticated business entity. (*Id.* at 10). For the reasons set forth below, the Court agrees with Plaintiff.

A close assessment of the applicable factors supports a finding that Plaintiff did not knowingly and voluntary waive his right to a trial by jury on the Surviving Claims. Even if the Court assumes that (i) no gross disparity in bargaining power existed amongst the parties, (ii) Plaintiff had at least some level of sophistication,[3] and (iii) the jury waiver provision is conspicuous, a plain reading of the Agreement reflects that it does not squarely contemplate lawsuits involving the Surviving Claims. The jury waiver provision at issue unambiguously states that the waiver applies to "any dispute *arising out of or in connection with this Agreement*." (Agmt. ¶ 8 (emphasis added)). Accordingly, the jury waiver provision is limited in scope to the topics contained in the Agreement. Defendant has not met its burden to establish that the Surviving Claims fall under the Agreement's scope.

Relevant here, the Agreement is titled "Agreement Concerning Confidentiality and Non-Disclosure," and discusses topics including, but not limited to, non-solicitation of customers and employees, trade secrets, confidentiality, personal information, return of documents, inventions, professional behavior, and employment at will. (*See generally id.*). The Agreement does not purport to cover all aspects of Plaintiff's employment, nor does it include a single provision that touches on, let alone explicitly addresses, any potential retaliation claims asserted by Plaintiff as an employee of Defendant. (*See generally id.*). Indeed, Defendant does not squarely address how Plaintiff's retaliation claims are subject to the jury waiver provision under the fully integrated Agreement.[4] Defendant instead makes a lump-sum argument: because the Surviving Claims "are all premised on Plaintiff's allegations that he was discriminated against and harassed at work based

---

[3] (*See* Mov. Br. at 4–5 (noting that "Plaintiff had many years of experience as a finance manager and worked for Defendant for a year as a sales representative when he entered into his [A]greement")).

[4] Indeed, Defendant does not dispute that the Agreement governs (*see generally* Mov. Br.); nor does it raise the prospect of more restrictive provisions that would govern under a different document pursuant to the integration clause in paragraph 14 of the Agreement at issue here (*see generally id.*).

7

on his national origin" the allegations "arise out of and are connected to Paragraphs 6 and 9 of the Agreement." (Mov. Br. at 8; *see* Reply Br. at 3 (same)). In other words, Defendant contends that because Plaintiff's retaliation claims are premised on his reports of alleged discrimination, the Agreement covers all of the Surviving Claims. (*See* Mov. Br. at 7 (arguing that it was Plaintiff's "complaint [of discrimination] and how [he] believe[d] his complaint was handled that is the genesis of this litigation")). Defendant's analysis with respect to Plaintiff's retaliation claims necessarily assumes that Plaintiff's Title VII hostile work environment claim—the only remaining cause of action sounding in discrimination—is subject to the jury trial waiver under the Agreement by way of paragraphs 6 and 9. (*See* Mov. Br. at 6–9; Reply Br. at 2–4). As discussed herein, the Court is not persuaded.

First, as noted above, paragraph 6 provides that the forum selection provision "shall govern . . . claims or disputes with respect to discrimination based on age, sex, race, color, or creed or sexual or other harassment at the workplace" (Agmt. ¶ 6), and thus formed the basis of Judge Kendall's decision "requiring the Parties to resolve this employment discrimination dispute in the United States District Court for the District of New Jersey." (D.E. No. 35 at 7–8). Although paragraph 6 clearly provides that this Court shall be the proper forum for workplace discrimination and harassment claims, it does not state that the Agreement's *other provisions* apply to discrimination and harassment claims. (*See* Agmt. ¶ 6). Said differently, while the forum selection provision clearly applies to workplace discrimination and harassment claims, it does not, by its plain terms, alter the scope of other sections of the Agreement. (*See id.*). Nor has Defendant established how Plaintiff's substantive claims might "aris[e] out of or in connection with" the Agreement's forum selection clause.

Paragraph 9 of the Agreement covering "Professional Behavior" does not move the needle

8

in Defendant's favor. Specifically, pursuant to this provision, Plaintiff agreed to report in writing, within 24 hours, any instance in which he felt subject to sexual harassment or other discrimination. (Agmt. ¶ 9). The plain language of this provision required *Plaintiff* to take certain internal actions if and when he believed he was subject to discrimination or sexual harassment. (*See id.*). Contrary to Defendant's assertions, paragraph 9 does not say anything about potential discrimination or harassment claims raised by Plaintiff in a court of law. Moreover, Defendant has not carried its burden of demonstrating that any of the Surviving Claims "aris[e] out of or in connection with" the internal reporting requirement in paragraph 9. Plaintiff's hostile work environment claim clearly exists independent of the internal reporting requirement—indeed that requirement only comes into play *after* Plaintiff has suffered the sort of discrimination he alleges in the Complaint, and nothing in the motion record reflects that paragraph 9 has any bearing on Plaintiff's discrimination claim or Defendant's defenses thereto. Similarly, while Plaintiff's other Surviving Claims involve allegations of retaliation, Plaintiff explicitly alleges that Defendant retaliated against him for filing a complaint with the Equal Employment Opportunity Commission—*not* for his internal reporting. (Compl. ¶¶ 38–40). In short, because the remaining issues in this action are unrelated to Plaintiff's internal reporting of purported discrimination, they do not "aris[e] out of or in connection with" paragraph 9 of the Agreement.

Although the parties did not cite cases interpreting a similar agreement and jury waiver provision in the context of claims for hostile work environment and retaliation, the Court's independent research is enlightening. For instance, unlike the instant matter, the agreement in *Jeffress v. Ocwen Financial Corporation* explicitly stated that plaintiff "agree[d] to waive [her] right to a jury trial with respect to any claims, controversies or disputes which arise out of or relate to [her] employment with [defendant] or separation therefrom." *See* No. 15-6330, 2016 WL

9

3014885, at *1–4 (E.D. Pa. May 26, 2016) (finding a knowing and voluntary waiver of plaintiff's right to a jury trial for claims of racial discrimination and retaliation under federal and state law). By contrast, the jury waiver provision here is limited to "any dispute arising out of or in connection with th[e] Agreement," which, apart from the provision invoking this Court's jurisdiction described above, does not contain any clause that governs employment-related claims.

Furthermore, this matter appears most akin to *Jones Lang LaSalle Americas, Inc. v. Jaffe*, No. 23-4100, 2024 WL 3497899 (E.D. Pa. July 22, 2024). In *Jones*, the defendant and former business associate of plaintiff brought claims and counterclaims ranging from breach of contract to misappropriation of trade secrets to Title VII discrimination. *Id.* at *1. One of several agreements contained a jury waiver provision and the court assessed the reach of the jury waiver on a claim-by-claim basis. *Id.* There, like here, an independent contractor agreement ("ICA") contained a jury waiver provision stating that "[t]he parties knowingly and willingly waive a trial by jury in any dispute arising out of or in any way related to this Agreement." *Id.* In addition, much like the instant matter, the ICA included terms on certain aspects of the parties' relationship, such as confidentiality, the return of documents and property, and non-solicitation. *Id.* Plaintiff moved to strike defendant's jury demand on a variety of claims. *Id.* at *2. Although the court found that plaintiff's trade secret claims were subject to the jury trial waiver, it found that the waiver did not "stretch[] so far to cover claims arising in any way from the working relationship." *Id.* at *6. The court reasoned that "the specifics of the ICA agreement are not essential to consider [plaintiff's] Title VII claims, nor [was it] persuaded that the language of the jury waiver provision [was] broad enough to encompass all claims arising from [the parties'] client-contractor relationship." *Id.* at *7. Thus, the court found that defendant was entitled to have a jury resolve her counterclaims for discrimination. *Id.* This matter aligns with *Jones*. Accordingly, the jury

10

waiver provision here is not broad enough to encompass Plaintiff's Title VII hostile work environment claim or retaliation claims that arose from the parties' employer-employee relationship. *See id.*

### IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to strike Plaintiff's jury demand and to enforce the parties' jury waiver *without prejudice*. An appropriate Order accompanies this Opinion.

Dated: June 30, 2025

                                                                         s/ *Esther Salas*
                                                                        **Esther Salas, U.S.D.J.**